UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO.: 7:09-CR-75-1FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | SENTENCING MEMORANDUM FOR DEFENDANT |
| | ) | |
| JASON CHRISTOPHER COLLINS | ) | |
| | ) | |

## SENTENCING SUBMISSION

This sentencing submission is respectfully submitted on behalf of Jason Christopher Collins, who will appear before the Court on March 9, 2010.

## INTRODUCTION

Mr. Collins, a citizen of the United States made the tragic mistake of possessing ammunition having been a convicted felon in violation of federal law. Mr. Collins readily accepted responsibility, agreed to cooperate and pleaded guilty.

The Probation Department calculated that Mr. Collins' sentencing guidelines range is base offense level of 12, with a criminal history of category of V, the guideline range is 27 to 33 months in Zone D.

## BACKGROUND

Mr. Collins is 27 years old with a fiancé in New Hanover County and is the father of one child. Since Mr. Collins youth and despite his criminal history when he was 18 years and younger he has developed very strong roots in Wilmington, N.C., has been welcomed and accepted by the community, and had essentially started the process to change his entire life. (See attached letter submitted as Exhibit A)

Prior to his arrest and detention Mr. Collins has been gainfully employed in the Wilmington, N.C. area since 2005 and upon his return to Wilmington he was befriended by Bill and Peggy Perdew, life long residents of New Hanover County. Mrs. Perdew taught Mr. Collins to properly read and write even though Mr. Collins had attended school through the eighth grade but still lacked those skills, Mr. William Perdew mentored Mr. Collins in financial areas and religious areas. Mr. Collins had lunch with Mr. Perdew almost seven (7) days a week and has developed a very deep "family"

connection with the Perdews' to the point where Mr. Collins refers to the Perdews' as "Mom and Pop". Both Mr. & Mrs. Perdew are 90 years old.

The mutual love is genuine and heart-felt and the Perdews' await Mr. Collins release with "open arms". (See attached letter submitted as Defendant's Exhibits B) Brooke Quinn is Mr. Collins fiancé mentioned above and she too is anxiously awaiting Mr. Collins release. She has two children who interact with Mr. Collins as if he were their father and Mr. Collins has affection for these children as if they were his natural born children. Upon Mr. Collins release Ms. Quinn and Mr. Collins plan to marry and live in a residence provided by the Perdews. (See attached letter submitted as Exhibit C)

Mr. Collins as mentioned above has one child Alexis, age 3, who presently resides with the mother Kimberly Browning while Mr. Collins is incarcerated. Mr. Collins has legal custody of Alexis and Ms. Browning plans to return Alexis to Mr. Collins upon his release. (See attached letter submitted as Exhibit D).

The Court should be aware that Mr. Collins was voluntarily participating in a behavior treatment program with the Delta Behavioral Health facility in Wilmington with Joseph LeBlanc, a licensed Clinical Social Worker and Addictions Specialist. According to Mr. LeBlanc, Mr. Collins came to him for the purpose of anger management and improvement of his coping skills to get his life in order. Mr. Collins plans to resume his participation upon his release and the facility will gladly welcome him back. (See attached letter submitted as Exhibit E).

Unfortunately, since Mr. Collins arrest and his continued detention all these matters have been placed "on hold". The Perdews and Ms. Quinn maintain contact through correspondence and limited telephone contact but the emotional hardship has been grave.

Mr. Collins is well aware and full of remorse that his family, friends and plans of the future are "on hold" because of his error in committing the instant offense. He recognized his errors and yet also recognizes the arrest, detention and the possible further sentence of the Court have had a positive effect on him and his future conduct as a man, son, father, husband and friend.

As indicated above Mr. Collins cooperated early with law enforcement and continued to cooperate prior to his entry into a Plea Agreement. His cooperation was taken into consideration by the U.S. Attorney's office and a decision was made to approve and file a Motion for Downward Departure (U.S.S.G§ 5.K1.1) (See attached Motion submitted as Exhibit F)

The cooperation prior to entry of plea is another example of Mr. Collins continued lifestyle adjustment to "do the right thing".

## FACTS

On October 13, 2008 an altercation occurred without Mr. Collins knowledge and participation, which resulted in the Wilmington Police Department coming to the site of the altercation, which at the time was Mr. Collins and Brooke Quinn's residence and the contiguous property of Shauntee Sutton. Mr. Collins had been consuming alcohol earlier and was already asleep in his residence when his brother, Donald Collins, his mother Sharon Collins and neighbor Shauntee Sutton had an argument about moving an automobile so Mr. Collins brother and mother could depart. The neighbor called 911 and prior to the responding officers arrival Mr. Collins brother Donald and his mother had departed. (See attached letters submitted as Exhibit F and G) Mr. Collins was requested to speak with the officers and was somewhat irate, intoxicated and confused by the officer's presence and ordered him off his property. While the police were still at the scene Mr. Collins still in the confused and irate state of mind enhanced by the consumption of alcohol made a 911 call wherein he told the dispatcher he wanted the police to leave and further stated he would "shoot" somebody if they continued to harass him. Mr. Collins never threatened to use a firearm against law enforcement (actual recorded call reveals Mr. Collins said "somebody").

Based on the above facts the police did leave and obtained a search warrant, which was served on Mr. Collins on October 30, 2008. During the search a box of Ammunition with various types and rounds was located. Police had earlier established Mr. Collins was a convicted felon and ammunition was illegal for him to possess since his Certificate of Restoration of Forfeited Rights of Citizenship did not include the right to possess firearms or ammunition. (See attached Certificate submitted as Exhibit H). It should be noted that Mr. Collins could have and should have petitioned for relief to have his rights to own or possess firearms and ammunition restored but it was not done.

MR. COLLINS RESPECTFULLY REQUESTS A SENTENCE, WHICH INCLUDES CONSIDERATION FOR VARIANCE AND THE MOTION FOR DOWNWARD DEPARTURE.

The Probation Department concluded that Mr. Collins final offense level was 12 with a criminal history category of V the guideline range for imprisonment is 27 to 33 months in Zone D. Ten (10) of the twelve (12) criminal history points are from Mr. Collins being 18 years or younger.

As an initial matter, Mr. Collins has shown himself to be a loving family man, and caring and involved member of the community, as noted above and as described in greater detail in the attached Exhibits from family and friends.

Further Mr. Collins consistently acknowledged his crime to authorities and upon his arrest and during his detention agreed to plead guilty and cooperate.

More importantly, Mr. Collins and his family have suffered deeply painful collateral consequences from his criminal conduct, in many ways:

First, the loss of consortium and constant love between Mr. Collins and his 3 year old child, Alexis, Brooke Quinn his fiancé, Brooke Quinn's two children and Mr. & Mrs. William Perdew.

Second, following the sentencing hearing, Mr. Collins may invariably spend additional time in detention beyond the six (6) months he has already spent since his arrest by Federal Authorities.

It is true, as the Courts have noted in connection with Motions for downward departure based on extraordinary family circumstances, that a defendant's family suffers greatly from a defendant's incarceration. Here, however, the family will suffer far greater harms beyond the incarceration.

## CONCLUSION

For all the foregoing reasons, Mr. Collins' respectfully requests consideration for a variance and downward departure from the Sentencing Guidelines Range.

Respectfully Submitted,

This the 4th day of March 2010.

Edward D. Seltzer
Attorney for the Defendant
128-C North McDowell Street
Charlotte, N.C. 28204
704-344-8226
NC Bar # 9458
Sedward979@aol.com

## CERTIFICATE OF SERVICE

I, Edward D. Seltzer, do hereby certify that a copy of the foregoing documents have been served upon Defendant's attorney by Via Facsimile to the following person at the following number:

Yvonne V. Watford- McKinney
Assistant United States Attorney
Criminal Division
Fax No.: 919-856-4487

This, the 4th day of March 2010.

Edward D. Seltzer
Attorney for the Defendant
128-C North McDowell Street
Charlotte, N.C. 28204
(704) 344-8226
NC Bar # 9458
Sedward979@aol.com

EXHIBIT
A

I William Edward Stell Jr., have known and been friends with Jason Collins for the past several years. We were put into contact by a mutual friend at the time. Jason and I shared a common interest in auto mechanics. It has been a hobby of mine for many years. Jason was inquisitive and wanted to learn more. We spent countless hours in my garage turning wrenches and talking shop. Jason was devoted and hard working. It wasn't long before he was doing small repair jobs on his own. We had developed a friendship that continues today. I had contact with Jason daily. Often he would call upon me for help, guidance, or advice with mechanics. But more importantly he will call upon me for help, guidance or advice on decisions in life. An act that in itself is the definition of the word friend.

I know only of the stories that tell who Jason Collins once was. A young man without direction perhaps. It seems a person with no sense of purpose or reason to care. However, the Jason Collins that I have known for the past three or

more years is full of direction with a desire to learn and grow in life. A loving father to his young daughter who gives him a new purpose and more than reason to care. Jason is now a motivated and generous contribution to Society, and an enhancement to my personal life and family.

WILLIAM EDWARD FELL JR

EXHIBIT
B

A STATEMENT ABOUT MY ASSOCIATION WITH JASON C. COLLINS

My name is William E. (Bill) Perdew. I am ninety years old, am a CPA and go to work daily. Jason Collins is like a grandson and a son to me and adds a special dimension to my life.

Through our close association over many years, I came to admire and love Jason Collins and to know him like a son. To admire because of what he has done with his life through his determination to improve himself from a tough start. To love because of his nature to be interested in helping others and because of our close personal relationship, which developed during several months when he lived in our home. We developed a strong bond at that time like a grandfather and a grandson. He has been like a grandson, a son and best friend since then. He helps me in many ways; he gives me a steadying hand when walking on uneven ground or pavement; he drives my car as we go around town; he keeps it in good operating shape. He is very close to me and my wife. He calls me "Pops" and calls my wife "grandma".

Jason grew up in a dysfunctional family in a public housing project. My wife tutored him through a program designed to help children in those circumstances with their education. It was through her efforts that he learned to read and she showed him what the love of a caring friend could mean. She became like the grandmother he needed and loves. As part of that tutoring program he was in our house often. Many of our friends and relatives developed an interest in and affection for him.

While he was young he left home to be on his own and we lost track of him. He made mistakes for which he served time. Instead of making him bitter, he has used them to improve himself. He lived in Atlanta for several years where he earned a living on his own.

Later when he was grown and around 24 years old he moved back to Wilmington, his home town. Not long after he was charged with assault against a man who was molesting a young girl. The charges were later disposed of as a misdemeanor. But meanwhile he was put in the local detention center. My wife put up bond for his release while awaiting action by the Court. He moved in with us in our home where he spent several months. It was during that time we developed our bond and close relationship. I admired how much he has matured and how he had changed his life for the better.

After several months he moved out to live with others. However, we kept in close touch every day by phone or visit and sometimes both. He confides in me and shares with me what is on his mind. I've come to know him very well and perhaps as well as or better than anyone. In order to further improve himself, he started seeing a psychologist at a group called Delta Behavioral Health and I went with him for his several visits

His nature is to help people and he has many friends. He is smart, has good leadership qualities, has business sense and potential for the future.

He has a little girl who will soon be three years old whom he adores and who loves him dearly. She is living out of town with her mother at present. But he has primary custody of her and she is to return to him when he is released. She needs his love and the care he can provide.

Jason has changed completely from his early years. As I have said, he has used his experiences to grow and mature. He is a good citizen and has become a family man. I can't say enough good things about him.

While he has been in the detention center we have kept in as close touch as possible with daily phone calls and letters. Jason is a very important part of my life. As I grow older I need him even more in my life and I am hoping he can be released soon when we can continue our close association. I think of him as my son.

William E. Perdew
1828 S. Live Oak Pkwy
Wilmington, NC 28403

EXHIBIT
C

To whom it may concern:

My name is Brooke Daly Quinn, 28, mother of two boys, and I am writing this letter to ask that Jason be allowed to come home as soon as possible. I suppose I should start out with a little information about my children.

My oldest son is Malachi, 8, he calls Jason, "Dad." Malachi has always been "my" son but now I can say he is Jason's too. His real father isn't in the picture and many days he finds himself left out from activities at church and school because it is a father/son event. He wonders when Jason will be able to come home and take him fishing, camping, 4-wheeling, ect. I work a lot and Malachi is lonely because I am not able to spend time with him like I used to and Jason isn't here. Corbin's, 5, father is in the picture. However he isn't exactly connecting with Corbin in the ways that he needs to. Corbin has special needs. While his Dad is a great friend to him he lacks the drive to teach him life. I received custody of Corbin after not having him for one year due to my decision with my ex-husband because I couldn't financially support 2 kids on my own. I did not lose custody in court. His father and I completely support each other in raising our son together. When he came to live with me he wouldn't eat, no one could understand him, and his discipline was lacking basic life lessons. With Jason in his life he was finally getting all of that. He would sit at the table and try new foods, happily. He listened to what he was told to do. For some reason Jason was able to connect to him in that fatherly way that he needed most. Without Jason he is regressing horribly! He wonders around looking for Jason and asks about him often, which isn't his nature to miss people. He is struggling in school and I know that Jason could help him in so many ways. Jason also has a daughter, Alexis, 2, and I was fortunate to raise her over half of her life. She needs him. While she has a good mother, Kim, she is overwhelmed with a new baby herself. Alexis needs her father, and every time she is on the phone with us she asks him when he will be coming to get her. All three of these children need Jason's influence in their lives to grow up healthy successful individuals. He is meant to be a father. It is one of the best things to see him do!

I am working very hard right now to keep afloat. I work fulltime as a cook for a fast food restaurant. It isn't the job I dreamed of, but I will continue working towards my career goals by starting college again in the spring. I am so overwhelmed with the responsibility as it is. I am a full time mother, worker, cleaner, so on and so forth, and I am scared of how hard it is going to be adding fulltime student to my schedule. Yet, I push on because I want all of us to have a happy life. With Jason here I wouldn't have to worry about the children and who is picking them up from daycare. If they have done their homework or if they were able to get by not doing it by manipulating the babysitter. I would be able to come home and not spend their one hour up giving them a bath; I could spend time with them relaxed playing a game and not rushing them to bed.

Most importantly, I miss my friend, partner, and the man he is. Jason is the one person I trust in this world. He supports my education, my past partners did not. He makes me laugh, and now of days that is a rare commodity in my life. I am able to have good clean fun with him, where as most people just want to go out and party. I cry many nights because I am without him. Not because I can't do it without him, but because we always did it better as a team. I am not saying that he is without fault.

He does need to work on some things, and he hasn't been able to while he is in jail. He needs to continue counseling. When we first got together I was hesitant. He had a

sharp tongue and quick to become irritated. I saw these as flags that I didn't want to deal with, but Jason decided that he wasn't going to give up. He started seeing a therapist on his own to get better. When I saw this initiative I realized that I really admired him for that. He is willing to work and admit to his behavior. He started taking medication to help even though he was completely skeptical of its ability to help. So I saw that he was willing to trust that he may not always be right and do it another way. These are traits that everyman should have, but most don't when raised the way he was.

Please let Jason come home soon. I need him as a father to his kids, my partner to life, and to see him blossom even more.

Sincerely,
Brooke Daly Quinn
1075 Green Hill Rd NE
Leland, NC 28451
910-253-4360
910-520-6699




**Perdew, Bill**

**From:** Kimberly Browning [alexis_mommy_2807@yahoo.com]
**Sent:** Thursday, December 31, 2009 5:17 PM
**To:** Perdew, Bill
**Subject:** Jasn's Letter

Jason is an amazing father to our daughter, Alexis. He has always been there when she has needed him. He is a very dependable person and father. He may have made some mistakes in his life in the past but now all he wants to do is make his life better to help Alexis and himself. I think that when this expereance is over he will continue to better himself. The time that he is spending away from our daughter is not only hurting him but huting Alexis aswell. Jason is a wanderful person who only trys to better himself and help others.

Sincerly,
Kimberly Browning
Dec. 31, 2009

EXHIBIT
E



1920 Tradd Court
Wilmington, NC 28401
Telephone: 910.343.6890
Fax: 910.332.1233

Jane St. John, MA, LPA, LCAS, CCS, Member/Manager

Benjamin Baldwin, Psy.D.
Richard Brice, MSW, LCSW
Beth Flack, MA, LPA
Joseph Leblanc, MSW, LCSW, LCAS
Cheryl Maddox, MSW, LCSW
Junius H. Rose, III, MD
Naveen Thomas, MD
Margaret Brice, MSW, LCSW
Sarah Brownlee, MSW, LCSW
Shi Kim, MA, LPA, LCAS
John Lothes, MA, LPA
Robert Weinstein, MD
Nova Swanstrom, MA, LPA
Christina Hall, Office Manager

**TO:** Whom It May Concern
**FROM:** Joseph Leblanc, LCSW, LCAS
**RE:** Jason Collins, SS# 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, DOB 8/14/82
**DATE:** January 4, 2010

This letter is being sent to let you know about my experience working with Jason. I first met with Jason on 7/17/08 for initial intake. Jason was interested in coming for treatment to help deal with anger management issues and to learn coping skills needed to get his life on track. Jason came to our program for individual therapy services as well as medication management services. During my time working with Jason I was able to see some improvement in his decision making as well as some improvement anger control. My last time seeing him was on 5/21/2009. Should he desire to continue working with this agency, he would be welcome back. If you have any questions or need any further information you can contact me at the number listed above.

Joseph Leblanc,
Licensed Clinical Social Worker
Licensed Clinical Addictions Specialist

EXHIBIT
F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:09-CR-75-1FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | MOTION FOR DOWNWARD DEPARTURE |
| | ) | PURSUANT TO U.S.S.G. §5K1.1 |
| JASON CHRISTOPHER COLLINS | ) | |

NOW COMES the United States of America, by and through the United States Attorney for the Eastern District of North Carolina, and moves this Honorable Court to grant the defendant a downward departure from the advisory guideline range to be established at the sentencing hearing, pursuant to advisory U.S.S.G. §5K1.1.

In support of this Motion, the United States says as follows:

1. On June 18, 2009, a one count indictment was returned by a federal grand jury charging the defendant with felon in possession of a firearm and ammunition, in violation of Title 18, United States Code, Sections 922(g)(1) and 924. On January 19, 2010, the defendant entered a guilty plea to felon in possession of ammunition.

2. Prior to the defendant's plea, he debriefed with law enforcement officers on two occasions and provided information concerning persons engaged in narcotics trafficking in the Wilmington, North Carolina area. The United States believes the assistance provided by the defendant may eventually assist in the prosecution of other individuals concerning whom the defendant

cooperated. Based upon his substantial assistance, the United States recommends a 20 percent reduction from the bottom of the advisory guideline range.

WHEREFORE, the United States prays this Honorable Court to reduce the defendant's sentence pursuant to U.S.S.G. §5K1.1.

Respectfully submitted this 22nd day of January, 2010.

GEORGE E.B. HOLDING
United States Attorney

/s/ Yvonne V. Watford-McKinney
YVONNE V. WATFORD-MCKINNEY
Assistant United States Attorney
Criminal Division
Suite 800, Federal Building
310 New Bern Avenue
Raleigh, North Carolina 27601-1461
Telephone: (919) 856-4530
Fax: (919) 856-4487
N.C. Bar No. 26812
yvonne.watford@usdoj.gov

## CERTIFICATE OF SERVICE

This is to certify that I have this 22nd day of January, 2010, electronically filed the foregoing MOTION FOR DOWNWARD DEPARTURE PURSUANT TO U.S.S.G. §5K1.1, using the CM/ECF system, which will send notification of such filing to:

Edward D. Seltzer
Attorney at Law
128 N. McDowell Street, Suite C
Charlotte, NC 28204
SEdward979@aol.com

/s/ Yvonne V. Watford-McKinney
YVONNE V. WATFORD-MCKINNEY
Assistant United States Attorney
Criminal Division
Suite 800, Federal Building
310 New Bern Avenue
Raleigh, North Carolina 27601-1461
Telephone: (919) 856-4897
Fax: (919) 856-4487
N.C. Bar No. 26812
yvonne.watford@usdoj.gov

EXHIBIT
G

IPTR138 (97)

NORTH CAROLINA DEPARTMENT OF CORRECTION

CERTIFICATE OF RESTORATION OF FORFEITED RIGHTS OF CITIZENSHIP

RE: DOC ID: 0663237

KNOW ALL MEN BY THESE PRESENTS:

WHEREAS, COLLINS, JASON C. WAS ON MARCH 07, 2001 COMMITTED TO THE NORTH CAROLINA DEPARTMENT OF CORRECTION FROM:

| COURT | COUNTY | SENTENCE LENGTH MIN TO | MAX | CRIME | DOCKET NUMBER |
|---|---|---|---|---|---|
| SUPERIOR | NEW HANOVER | 0001000 | 0010000 | POSSESSING STOLEN GO | 00030133 F |
| SUPERIOR | NEW HANOVER | 0001000 | 0010000 | LARCENY OVER $1000 | 00019116 F |
| SUPERIOR | NEW HANOVER | 0001000 | 0010000 | LARCENY OVER $1000 | 00030132 F |

AND WAS UNCONDITIONALLY DISCHARGED BY EXPIRATION OF HIS/HER SENTENCE(S) ON JULY 20, 2003

NOW, THEREFORE, THE SECRETARY OF CORRECTION DOES HEREBY CERTIFY THAT, PURSUANT TO SECTION 13-1 OF THE GENERAL STATUTES OF NORTH CAROLINA, ALL RIGHTS OF CITIZENSHIP WHICH WERE FORFEITED ON CONVICTION ARE BY LAW AUTOMATICALLY RESTORED SUBJECT TO THE EXCEPTION OF THE RIGHT TO OWN OR POSSESS FIREARMS, AS SET OUT IN THE "N. C. FELONY FIREARMS ACT", CODIFIED AT SECTION 14-415.1 OF THE GENERAL STATUTES OF NORTH CAROLINA

IF THE ABOVE SECTION APPLIES TO YOU, YOUR RIGHT TO POSSESS FIREARMS IS SIGNIFICANTLY LIMITED. YOU MAY PETITION FOR RELIEF FROM THIS ACT BY CONTACTING: BUREAU OF ATF, LIAISON FOR PUBLIC INFORMATION DIVISION, 650 MASSACHUSETTS AVE., N.W, ROOM 8032, WASHINGTON, D.C. 20226-0013

IN WITNESS WHEREOF THIS CERTIFICATE IS ISSUED THE 19TH DAY OF JULY , 2003

EXHIBIT
H

TO: Whom it may concern

Here is the list of events of what happened that day: Me and my brother went to go see and old friend of ours. He slept with my brother's baby momma. They then got into a fight. My Brother hurt his hand real real bad. He didn't want to go to the hospital and was really upset about what happened. We then got a bottle of jack daniels. We were all sittin in my brothers garage drinkin. It then got really late. My brother went to bed. Brooke still might have been up. I can't recall. I was really drunk and called my mom for a ride. When she picked me up I got in the van. We were backing up and chantee the neighbor pulled in behind us. She wouldn't move and kept us blocked in. We waited and she still wouldn't move. So I got out of the van to approach her and the guy she was with. She started yelling and so did I. My mom tried to stop her from gettin in my face and she put her hands on my mom. Then I got really mad and my mom dragged me back to the van.

So we then left, There is a police report about the incident. My brother was a sleep. He had absolutly nothin to do with it. He shouldn't have to be punished for other peoples mistakes he is a good father and lovin brother who would give u the shirt off his back. He deserves to be with his daughter and not in jail. the police had no reason to be there when the police was takin words from a drug dealer. My brother is not a bad person and should be released.

Thanks

Sincerely

Donald Card

EXHIBIT
I

12-28-09

My name is Sharon Collins and I writing this letter for Jason Collins my son.
My son Donald Collins called me and told me he needed a ride home. I went to Jason house to pick Donald up. When I got there I spoke with Brooke for a few minutes She told me that Jason was already asleep. Donald and I started to leave we got in the van and I turned to back out of the driveway but there was a car behind us in the street. I waited a few minutes then Donald got out of the van. When he got out and went

to the back of the van the case moved. I went to Shante house across the street. Then I heard yelling from Shanti and then Donald. I got out of the van and walked back there. Shante & Donald were yelling. I got in between them and told them both to calm down. Shante put her hand on my arm and she was still yelling something about a fish. I told her to get her hands off me and told Donald to get in the Van. We got in the van and pulled off. I could still hear Shanti yelling at Brooke.

Sharon Collins